489 F.2d 1268
 160 U.S.App.D.C. 144
 NATIONAL ASSOCIATION OF INSURANCE AGENTS, INC., Petitioner,
v.
The BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM,
Respondent, The National Association of Life
Underwriters, Intervenor.
 No. 72-1938.
 United States Court of Appeals, District of Columbia Circuit.
 Jan. 9, 1974.
 
 Herbert E. Marks and Thomas J. Bacas, Washington, D.C., were on the brief for petitioner.
 William N. Albus, Washington, D.C., was on the brief for intervenor.
 Harlington Wood, Jr., Asst. Atty. Gen., and Walter H. Fleischer, and Robert S. Greenspan, Attys., Dept. of Justice, were on the brief for respondent.
 Before BAZELIN, Chief Judge, and McGOWAN and MacKINNON, Circuit judges.
 PER CURIAM:
 
 
 1
 This petition for direct review under Section 9 of the Bank Holding Company Act (12 U.S.C. 1848) seeks to set aside a rule issued by the Federal Reserve Board which purports to interpret one of its own regulations (12 C.F.R. 225.4(a)(9) and 225.128). It is variously asserted that, in doing so, the Board acted improperly without notice and hearing, failed to articulate adequate reasons, and lacked the support of substantial record evidence. The Board, in addition to challenging these assertions, contends that we are without jurisdiction to review the rule in question. We look to the setting in which the controversy arose.
 
 
 2
 The 1970 amendments to the Bank Holding Company Act extended its coverage to one-bank holding companies, and authorized the Federal Reserve Board to exempt from the general prohibition against engaging in non-banking activities such 'activities . . . which the Board after due notice and opportunity for hearing has determined (by order or regulation) to be so closely related to banking or managing or controlling banks as to be a proper incident thereto.' 12 U.S.C. 1843(c)(8). The Board in 1971 gave notice of a proposed regulation identifying a number of activities to be considered permissible for bank holding companies, including 'acting as insurance agent or broker principally in connection with extensions of credit . . .,' and invited public comment on its proposal. Petitioner participated actively in the hearings held on this proposal, urging among other things that the Board be more specific in its delineation of permissible insurance activities. Following the hearings, the Board promulgated in August, 1971, a regulation which enumerated permissible types of insurance activities. Thereafter petitioner challenged applications filed with the Board by individual bank holding companies for approval to engage in certain insurance activities, claiming that such activities fell outside the scope of the legislative authorization.
 
 
 3
 The Board did not approve any of the bank holding companies' applications, nor schedule hearings on them. In September, 1972, the Board issued the rule under attack here, setting forth its views on the meaning of some of the terms used in its regulation of August, 1971. This was done without prior notice or opportunity to comment, and it is this rule that petitioner, and intervenor National Association of Life Underwriters, urge us to set aside. Petitioner filed its brief in January, 1973. In March, 1973, the Board scheduled hearings on the individual bank applications pending before it, as to which petitioner had manifested its purpose actively to oppose.
 
 
 4
 Petitioner's claim is essentially that the 1972 rule has the effect of a 'determination' that particular insurance activities are permissible for bank holding companies, and thus is subject to the notice and hearing requirements of 12 U.S.C. 1843(c)(8), pp. 1269, 1270, supra. This court long ago recognized the difference, in terms of the necessity for notice and hearing, between regulations having the force of law, on the one hand, and interpretative rules, on the other:
 
 
 5
 Administrative officials frequently announce their views as to the meaning of regulations. Generally speaking, it seems to be established that 'regulations' . . . are those which create law, usually implementary to an existing law, whereas interpretative rules are statements as to what the administrative officer thinks the regulation means. Gibson Wine Co. v. Snyder, 90 U.S.App.D.C. 135, 194 F.2d 329 (1952).
 
 
 6
 This difference is also reflected in the Administrative Procedure Act, 5 U.S.C. 553(b)(3)(a), wherein it is specifically stated that the notice and hearing requirements of that statute do not apply to 'interpretative rules.' See K. Davis, Administrative Law Treatise, 5.03-5.04 (1958).
 
 
 7
 The statement emanating from the Board sought to be reviewed here appears to fall within the interpretative rule category, as distinct from the earlier regulation promulgated by the Board after notice and hearing. The latter begins with the statement that 'the following activities have been determined by the Board to be so closely related to banking, or managing or controlling banks as to be a proper incident thereto . . .,' and goes on to enumerate such activities. The 1972 rule under challenge, in contrast, begins with the observation that 'in the course of administering this 1971 regulation, a number of question have arisen concerning the scope and terms of the Board's regulation. The Board's views on some of these questions are set forth below.' Throughout the following part of the rule, the Board's views are stated in terms of 'the Board regards . . .' or 'the Board generally will regard . . .,' and there is no suggestion that these views have the finality or force of the specifications made in the earlier regulation.
 
 
 8
 This circumstance, in addition to appearing to refute the claim that the rule was improperly issued without notice and hearing, raises a very serious question indeed with respect to its reviewability under Section 9 of the act. That statute uses the standard language of review of 'an order' by an aggrieved party, and it explicitly contemplates review on a record made before the Board. Thus it would appear very doubtful indeed that the direct review of agency action by this court, authorized by Section 9, extends to the rule that is the subject of the petition.
 
 
 9
 In any event, in light of petitioner's ability to oppose, in the hearings required to be held before any bank holding company can be permitted to engage in insurance activities, particular applications of the 1971 regulation with the gloss of the 1972 rule, and the clear contemplation of the Act that Board adjudication based upon an adversary hearing record is the only available avenue to such permission, only the strongest showing of the immediate and inescapable effect of the mere announcement of the Board's interpretation of its duly promulgated regulation would suffice to advance review to the abstract stage at which it is now being sought. Obviously petitioner would find it more convenient to make its objection generally rather than in the context of each particular application proceeding. But that in no way distinguishes the challenged regulation from other clearly interpretative, unreviewable regulations such as those issued routinely by the Internal Revenue Service.
 
 
 10
 This petition for review, thus, seems premature at best. Petitioner does not deny that it can oppose before the Board and seek court review of particular application approvals, should there be any, with which it disagrees. Its argument that the challenged rule forecloses particularized challenges before the Board-- at least with any hope of being considered on the merits-- is unsupported and unsupportable. See note supra.
 
 
 11
 Dismissed.
 
 
 12
 ---------------
 
 
 
 1 In its brief in this court, the Board characterizes its rule as 'provisional and tentative in nature,' as not intended 'to irrevocably commit the Board . . . to a position,' and as simply a guide 'which could be relatively easy to modify if the Board is later persuaded that its interpretation is inadvisable . . .' The Board is, thus, hardly in a position to rely on the rule as foreclosing, in individual application proceedings, any interested party from contesting the validity of the interpretation, with judicial review available of the resulting order of approval if it fails to persuade the Board. Indeed, the Board in its brief expressly disclaims any such foreclosure.